# THE WILMINGTON STAR MINING COMPANY *et al.*

## *v.*

## ·EDMUND ALLEN *et al.*

*Filed at Ottawa May 18, 1880.*

1. LEASE—*forfeiture.* Where a written lease of a coal mine required the lessee to prosecute mining for coal without interruption, and forbidding him to assign the lease without the consent, in writing, of the lessor, and providing for a forfeiture and determination of the lease in case of a breach of any of its provisions, in which event the lessee was to surrender up the premises and property; and where the lessee, without the assent of the lessor, assigned the same to a third person, who discontinued all mining operations for more than a year, and had dismantled the mine and taken the machinery away before the appointment of a receiver of a corporation claiming under the assignee, and the lessor had re-entered and taken possession, it was *held,* on a petition by the receiver, that he was not entitled to a decree for possession, and that a decree dismissing his petition, and ordering him not to disturb the lessee or his assignee, was proper.

2. RECEIVER—*court may instruct.* The circuit court may properly instruct a receiver as to the management of property, on a petition filed by him in the suit in which he is appointed, against others claiming the property; and if the rights of such other party are established, there is no error in ordering the receiver not to disturb their possession until the further order of the court, upon the dismissal of the petition.

3. SAME—*management of property in his hands.* Where property of an insolvent corporation is placed in the hands of a receiver, a bill by a third person against the receiver, and a cross-bill by him, etc., may all be regarded as applications to the court having jurisdiction over the receiver and the business respecting the administration and management of the property. And where leasehold interests are involved, depending for their preservation upon the condition of continued operations, as of a mine, whether it should be kept on foot is a matter of business economy as well as of law. The jurisdiction of the court in such a case is largely discretionary, which will not be interfered with except in a case of flagrant error and injustice.

4. ESTOPPEL—*to dispute right to forfeiture of lease.* Where a lessor of a mine, then operated by an insolvent corporation in the hands of a receiver, had proposed, under the sanction of the court, to test his right to a forfeiture of the lease, and for that purpose had served due notice, but the proceedings were stayed by injunction, and after the dissolution of the injunction the' lessor was informed by the attorney of the corporation and receiver that no appeal would be taken, and that he could take possession of the mine, which

he did, and leased the same to another party, who made considerable expenditures in fitting up the same for operations, it was *held*, that after this abandonment and surrender of possession, and such action had on the faith of it, the lessee company and its receiver were estopped from retracting from such virtual surrender of the old lease.

5. INJUNCTION—*relief under prayer.* Under a prayer in a bill to enjoin the removal of machinery, etc., for mining purposes, pending proceedings to determine the forfeiture of the lease, until the further order of the court, the court may, on the hearing, make the injunction perpetual, if satisfied there never should be any further order to the contrary.

6. DECREE—*upon what pleadings.* Where a bill, cross-bill, petition and answers thereto, relating to the same subject matter, are consolidated and heard together, and a decree rendered, it will be considered as made in view of all the allegations of the parties as contained in all the pleadings, although the petition and cross-bill may be dismissed on the hearing.

WRIT OF ERROR to the Appellate Court for the Second District.

Messrs. GARDNER & SCHUYLER, for the plaintiffs in error.

Mr. G. D. A. PARKS, and Messrs. MUNN & MUNN, for the defendants in error.

Messrs. ISHAM & LINCOLN, for the defendants in error Ezra B. McCagg, Robert T. Lincoln and Edmund Allen.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The case presented by the record respects two separate and distinct coal mining leases, claimed to have belonged, at the date of the controversy, to the Wilmington Star Mining Company of Coal City, by assignment from the lessees, respectively, —one executed in 1870 by Ezra B. McCagg and John Forsythe, to Alexander Crombie, of the north-east quarter of section 8, and the west half of the south-west quarter of section 9, township 32 north, range 9 east, in Will county; the other executed in 1871 by Edmund Allen, to Henry E. Hamilton, of the west half of the south-west quarter of section 5, in the same township and range.

In a suit of Bacon Wheeler against this mining company, in the circuit court of Will county, Milford D. Buchanan had, on the 15th day of March, 1878, been appointed receiver of the goods and chattels of said company, and of its real estate.

On the 20th day of April, 1878, Allen, as landlord of the west half of the south-west quarter of section 5, filed a bill in chancery in said circuit court, against the company and Buchanan, its receiver, alleging that the company's mining lease from Allen had been forfeited, and praying for an injunction to restrain the taking away of certain coal mining machinery. A temporary injunction was granted. The company and the receiver answered, and filed a cross-bill against Allen, praying for an injunction to restrain him from taking possession of the land. A temporary injunction was granted on the cross-bill, and afterwards dissolved on motion.

Buchanan, the receiver, then, on the 23d day of September, 1878, filed in said court, in the suit of Bacon Wheeler against this company wherein Buchanan had been appointed receiver, his petition, averring that the company owned the Allen lease, and also owned the lease from McCagg and Forsythe to Crombie, of the north-east quarter of section 8, and the west half of the south-west quarter of section 9, and that on the McCagg and Forsythe land there was a railroad track. He avers that the company had ceased mining on the McCagg and Forsythe land prior to his appointment as receiver; that on July 14, 1878, Allen took possession of the railroad track on the McCagg and Forsythe land, and also forcibly ejected the receiver's employees from the Allen land, and that Baird, Hickox & Co., as tenants of Allen, are in possession of the Allen land.

The petition prays that the estate in the petitioner's hands may be protected and preserved; that Allen, Baird, Hickox & Co., and all persons claiming under them, be ordered to surrender to petitioner possession and control of said real estate, and restore to petitioner the rights and privileges held

by him as such receiver by virtue of said leases, and to deliver up to petitioner as such receiver all the personal property which belonged to said receiver, and that all the rights of the receiver might continue as when he accepted the trust, and that said Allen, and Baird, Hickox & Co. be remanded to the proper forum where the questions involved could be adjusted and the stockholders of the company be heard.

Allen, and McCagg and Lincoln, (the latter being the assignee of Forsythe,) answer the petition jointly and severally—McCagg and Lincoln for themselves, and as to the railroad on their land. The other respondents answered as to the Allen land. No replication was filed to the answers, and no testimony taken or heard; and on October 19, 1878, the court ordered that said cause of Edmund Allen against said company, and Buchanan as receiver, be consolidated with said original cause of Bacon Wheeler against said company, and a final decree was entered that the injunction on Allen's bill be made perpetual, and the said cross-bill be dismissed for want of equity, and that the said company pay the costs of the proceedings. And Buchanan, the receiver, moving upon his petition for an order upon Allen, and Baird, Hickox & Co., and upon McCagg and Lincoln, that they surrender to him the Allen leased land, and also the McCagg and Forsythe land and its railroad, it was ordered that the prayer of the petition be denied, and further, that, "inasmuch as the merits of the several matters of controversy involved in said bill, cross-bill and petition, have been fully adjudicated and determined, that said receiver take no proceedings whatever to disturb the said Allen, or his lessees or assigns, in the possession of said premises described in said petition, without the further order and sanction of this court."

The company took the case on error to the Appellate Court for the Second District, where the decree was affirmed, and the case now comes to this court.

It will be perceived from the statement made, that the case is not presented in the same aspect with regard to both the

mining lease here involved, hence requiring a separate consideration respecting them.

As respects the McCagg & Forsythe lease, Buchanan, the receiver of the Wilmington Star Mining Company, appointed such in a suit in chancery of Bacon Wheeler against said company, files a petition in said suit, alleging that his company, prior to its insolyency, was lessee by assignment of this McCagg & Forsythe land, by assignment of lease thereof from McCagg & Forsythe to Alexander Crombie, but had suspended operations on the land and only used the railroad track erected thereon. He attaches, as an exhibit, the lease, which shows that McCagg & Forsythe leased to Crombie, by a written lease requiring him to prosecute mining for coal without interruption, and forbidding him to assign the lease without their consent in writing, and providing for a forfeiture and determination of the lease in case of breach of any of its provisions, and that, in case of the determination of the lease, the lessee was to surrender up the premises and property.

McCagg and Lincoln, (the latter being the assignee of Forsythe,) on October 7, 1878, answer the petition (the answer being verified by affidavit,) and deny that either the company or the receiver had any rights under the Crombie lease, alleging that they never assented to or recognized the alleged assignment by Crombie; that for more than a year then past all mining operations at the mine had been discontinued by Crombie; that the mine had been dismantled and the machinery, etc., taken away long before the appointment of the receiver; that Crombie and the company avowed their purpose to abandon the mine and not resume operations there at any future time; that to formally determine the lease respondents, on the 8th of May, 1878, served notice on Buchanan, the receiver, and Crombie, of their election to forfeit the lease, and that after the service of the notice no resistance was offered to the re-entry of the respondents; that, by the terms of the lease, in event of determination by forfeiture, the

lessors were authorized to re-enter and take possession of the premises and the property placed thereon for mining purposes.

The statements of the answer were not in any manner controverted, either by replication or by proof.

We do not see what other order a court could properly make in such a case as to McCagg and Lincoln, and Allen holding under them, than to deny the prayer of the petition.

But plaintiffs in error object to the further order made by the court, after denying the prayer of the petition, that the receiver should not disturb Allen or his lessees in possession of the premises without the further order or sanction of the court, and say: " As to the defendants in error McCagg and Lincoln, they were made parties defendant to the receiver's petition, and answered accordingly. As the petition was dismissed on the final hearing, the defendants were out of court, and any order or decree entered as to them on the prayer of the Allen bill was absolutely void, for the reason they were not parties to the bill."

But as to McCagg and Lincoln, and Allen claiming under them, the order was not entered on the prayer of the Allen bill. The receiver's petition, and McCagg and Lincoln and Allen's answer thereto, as to the McCagg & Forsythe land, were in the suit in which Buchanan was appointed receiver, and the order was entered in that cause denying the prayer of the petition; and what is complained of further, was but giving the receiver instructions as to his management of the business in his charge. We think this might properly be done.

With respect to the other lease, that of Allen, various objections are made to the proceedings in regard thereto, as the not dismissing the Allen bill, the dismissing the cross-bill, denying the prayer of the petition, granting the injunction on the Allen bill, and making it perpetual.

The Allen lease provided for the payment of a rent of fifteen cents per ton for each ton of coal mined, and after the expiration of eight months a royalty of one ton per day as

additional rent, the rent to be paid on the 15th day of each month, and that the mining operations should be prosecuted with reasonable diligence, and that in case of failure to perform the covenants of the lease, the lessor could declare the lease ended and re-enter, and that after default the lessee was to surrender up possession of the premises and the improvements, etc., which the lessor was to receive in lieu of damages, etc. After appointment had been made of a receiver of the company, and on April 20, 1878, Allen filed his bill against the company and the receiver (making the lease an exhibit) alleging default in the covenants of the lease in two particulars,—in the non-payment of the rent due on the 15th day of March, 1878, and in the failure to prosecute mining operations with reasonable diligence, whereby the lease had become forfeited; and that in exercise of his right to determine the lease, he had given notice thereof to the company, and would proceed to repossess himself of the premises within twenty days from the service of the notice, praying for an injunction to restrain the company and its receiver from removing from the premises any machinery, etc., pending the proceedings instituted by complainant to recover possession thereof, and until further order of the court.

The answer of the company and the receiver denied there was any rent due, admitted a suspension of mining operations, but that it was only temporary and not with the intention of abandonment, and assigning reasons for the want of diligence in prosecuting the work of mining. No replication appears to have been filed to this answer. At the same time of filing their answer, May 14, 1878, the company and the receiver filed their cross-bill praying for a counter injunction against Allen to restrain him from further prosecuting his proceedings to obtain possession of the demised premises. No answer was filed to this cross-bill.

Subsequently, on their motion, leave was granted the company and receiver to withdraw their cross-bill and to file the same as an original bill. On the 15th day of June following

the temporary injunction which had been granted on the cross-bill was dissolved.

On the 23d day of September, 1878, as before stated, the receiver filed his petition in the case of Bacon against this company, wherein he had been appointed receiver, and in this petition set up the whole subject matter of the controversy involved in the aforesaid bill of Allen and the said cross-bill thereto, and also the additional matter of the McCagg & Forsythe lease.

In the answer, verified by affidavit of Allen, to this petition, he sets forth the previous filing of the bill of Allen against the company and the receiver, and of the cross-bill of the company and receiver; that upon full hearing of said cause upon original bill, answer and cross-bill, an order was made dissolving the injunction on said cross-bill, and continuing the injunction on the original bill; and then avers that after such determination, the solicitor for the receiver distinctly announced to the solicitor for Allen that, having taken counsel in Chicago on that subject, he should not prosecute any appeal, as at first proposed, and told him to inform respondent of such determination; and that he might proceed on the following Monday to take possession of the premises according to the demand in writing previously made upon the receiver. That accordingly respondent did take possession of the premises, and leased the same to Baird, Hickox & Co., for a term of ten years; that said lessees, at an expense of not less than $4000, had refitted the mine and resumed operations, and were raising at an average of two hundred tons of coal a day therefrom.

As before said, this answer was not questioned by exceptions, nor contradicted by either pleading or proof. And on the 19th day of October following, the final decree was entered, no proofs whatever having been taken.

The essential matter involved here was the right of forfeiture of Allen's lease. Upon the allegations of the parties, there being nothing more, we should say it does not appear

that there was a right to forfeit the lease for non-payment of rent.

Whether there was for not prosecuting the mining operations with due diligence, admits of question. But we do not feel called upon to go into the inquiry and determine what was the strict right in this respect, in view of the nature of the proceedings here.

The court here had in its custody, and was in the administration of the estate of an insolvent corporation over which it had appointed its receiver. We view the bill, cross-bill and petition as of the same essential character, as being all in the nature of applications to the circuit court having jurisdiction over the receiver, the estate and the business, respecting the administration and management of the property. And the applications were all finally, by a formal order, consolidated with the principal case in which the receiver had been appointed, and were all heard together.

The leasehold interests involved here depended for their preservation upon the special condition of continued active operations. Whether they should be kept on foot was a problem of business economy as well as law. The jurisdiction of the court in such case must be largely discretionary, and we think should not be interfered with by an appellate tribunal save in instances of flagrant error and injustice. And we find none such here.

Allen, in his bill, had proposed, under the sanction of the court, to prosecute proceedings to test his right of forfeiture under his lease. For this purpose due notice had been served. But his proceeding was stayed by injunction granted upon the cross-bill of the company and the receiver. Upon the dissolution of this injunction, as appears by sworn answer uncontradicted, Allen was soon after expressly informed, by a message from the attorney for the company, as well as the receiver, that no appeal would be prosecuted, and that on the following Monday he, Allen, might proceed to take possession of the premises. He accordingly did so, and made a new lease of

the premises to lessees, who proceeded thereunder and refitted the mine and resumed operations, making a large expenditure of money in so doing.

After this abandonment of the lease and surrender of possession, and such action had upon the faith thereof, it would be highly inequitable to retract what was a virtual surrender of the lease, and there should be an estoppel to do so.

We do not agree with the view urged, that as on final hearing the prayer of the petition was denied, the petition and answer thereto were dismissed out of court, and, therefore, that the decree was entered, not on the allegations of the petition and answer thereto, but on the original bill and answer. We do not think that the petition is to be disconnected from the bill and cross-bill, and they be treated as if they were separate proceedings, but that the whole record is to be taken together, and the decree of the court be considered as made in view of all the allegations of the parties as contained in all the pleadings in the case.

Criticism is made upon the language of the bill, as not being sufficient to found an injunction upon.

We think the allegations, in this respect, have been considered with too much strictness, and further, that the peculiar *status* of the estate here, and relation of the parties, do not require the application of all the strict rules of pleading which obtain between ordinary litigants.

It is objected that the bill was for a temporary injunction only, to restrain the removal of property pending proceedings at law for the possession of the demised premises after the default, etc., and that it was error to make the injunction perpetual, there being no such relief prayed.

The prayer was for an injunction pending such proceedings, and until the further order of the court. If the court, in decreeing the injunction, was satisfied there never should be any further order of the court to the contrary of the injunction, the court, we think, might, not improperly, under the prayer of the bill, make the injunction perpetual. If there

was reason for an injunction in the case, there was the same reason for its being perpetual. We regard this objection as one relating to no more than a matter of form.

The orders and decree being with reference to the administration of an estate, which was in the custody of the court, and under its superintendence, we find no sufficient reason for interference therewith, and the decree will be affirmed.

*Decree affirmed.*